# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**SHANNON E.,**[1]

       **Plaintiff,**

                                 **Case No. 3:20-cv-00516**

    **v.**                               **Magistrate Judge Norah McCann King**

**COMMISSIONER OF SOCIAL SECURITY,**[2]

       **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Shannon E. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 4, on *Plaintiff's Statement of Errors*, ECF No. 12, *Defendant's Memorandum in Opposition*, ECF No. 15, *Plaintiff's Reply*, ECF No. 16, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed her applications for disability insurance benefits and supplemental security income on June 5, 2018, alleging that she has been disabled since November 28, 2017, based on a number of physical and mental impairments. *See* R. 238-39, 240-44.[3] The applications were denied initially and upon reconsideration and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 182-83. Administrative Law Judge ("ALJ") Heidi Southern held a hearing on December 9, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 56-83. In a decision dated February 6, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from November 28, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 15-27. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 29, 2020. R. 1-7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's]

determination, it is conclusive, even if substantial evidence also supports the opposite

conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v.

Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have

supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not

be upheld where the SSA fails to follow its own regulations and where that error prejudices a

claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc.

Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

742, 746 (6th Cir. 2007)).

## B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 37 years old on her alleged disability onset date. R. 25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between November 28, 2017, her alleged onset date, and the date of the decision. R. 18. She meets the insured status requirements for DIB through December 31, 2023. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar spine degenerative disc disease; diabetes mellitus; hypertension; asthma; overactive bladder; obesity; depressive disorder; personality disorder; anxiety disorder; bipolar disorder; post-traumatic stress disorder ("PTSD"); and tobacco use disorder. R. 19.  The ALJ also found that Plaintiff's gastro-esophageal reflux disease ("GERD") and hyperlipidemia are not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; can stand and/or walk 4 hours out of an 8-hour workday; can sit 6 hours out of an 8-hour workday; occasionally push and/or pull with the left lower extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; limited to indoor work only with ready access to a restroom; avoid

concentrated exposure to extreme heat, extreme cold, humidity, wetness, and atmospheric conditions; no exposure to unprotected heights or moving mechanical parts; unable to perform at a production rate pace, but can perform goal-oriented work; occasional contact with coworkers and supervisors; no contact with the general public; and occasional changes in an otherwise routine work setting with changes being explained in advance.

R. 21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a merchandise deliverer and as a fast-food worker and manager. R. 25.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a document preparer, an assembler, and an inspector—existed in the national economy and could be performed by Plaintiff. R. 26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 28, 2017, her alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings and conclusions and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 16. Specifically, Plaintiff argues that the ALJ erred in her evaluation of the medical opinions relating to her mental impairments and in her RFC determination, and when she concluded that Plaintiff neither met nor equaled Listing 1.04. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 15.

## IV. RELEVANT EVIDENCE AND DISCUSSION

### A. Evaluation of Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred in her evaluation of the opinions of Plaintiff's mental health counsellors. The ALJ found that Plaintiff's depressive disorder, personality disorder, anxiety disorder, bipolar disorder, and PTSD were severe impairments. R. 19. Plaintiff testified at the administrative hearing that she cannot work because of pain and because of her PTSD and depression. R. 71. She works part-time, but has difficulty controlling her emotions; she yells at customers. R. 75. "I can't handle it emotionally." R. 68. She has panic attacks and anxiety in a room full of people or "if someone touches me funny." *Id.* She sees a psychologist, a psychiatrist, and a case worker for treatment. R. 71. She initially testified that her prescribed medications do not control her symptoms "all the way," R. 72, although she later clarified that she was currently "pretty much okay. . . ." *Id.*

Plaintiff underwent counseling at Samaritan Counseling Center from July 2016 to November 2017, R. 473, in connection with diagnoses of major depressive disorder in partial remission, unspecified personality disorder, and generalized anxiety disorder. R. 379. Plaintiff's mental status was characterized as "unremarkable" throughout the course of therapy. R. 382, 386, 390, 394, 398, 402, 406, 410, 414, 418, 422.

From April 2017 to October 2018, R. 1120, Plaintiff underwent medical management by Elizabeth Schmitt, M.D., at Nova Behavioral Health for diagnoses of major depressive disorder, recurrent episode, in partial remission, unspecified personality disorder, and generalized anxiety disorder. R. 730. On initial clinical examination in April 2017, Plaintiff was oriented and alert, had good concentration, intact memory and appropriate affect. R. 693. Throughout treatment,

7

Plaintiff was noted to be alert and oriented; she was cooperative, her thought processes were logical, and she reported no delusions or hallucinations. *See, e.g*., R. 701, 703, 706, 709, 712, 714.

In February 2019, Plaintiff began counseling at Mahajan Therapeutics with Wendy Rutledge, a counselor trainee. R. 1516. Plaintiff reported that she had presented to an emergency department in October 2018 after breaking down upon learning that Dr. Schmitt was leaving Nova Behavioral Health. R. 1521. Plaintiff also stated that "If I'm on my meds I'm pretty much OK." R. 1516, 1533*.* However, she reported "huge rage" and guilt. R.1533. On clinical examination, Plaintiff's demeanor was average and she reported no delusions or hallucinations. R. 1529-30. Her thought process was coherent and logical, her mood was euthymic, and her affect was full. R. 1530. She was cooperative. *Id*. She reported no impairment of attention, concentration, or memory, *id.*, and her insight was good. R. 1531. No risk to self or to others was noted. R. 1533. Throughout treatment from February to November 2019, Plaintiff's thought process, judgment, insight, concentration, and memory were normal, Plaintiff was oriented, her mood was stable or slightly anxious, and her affect was calm. R. 1552, 1560, 1567-68, 1576, 1584, 1592, 1600, 1608.

Joseph Edwards, Ph.D., and Kristen Haskins, Psy.D., reviewed the record on behalf of the state agency in August and November 2018, respectively, and completed mental RFC assessments. R. 96-97; 127-129. According to Dr. Edwards, Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and in her ability to work in proximity with others without being distracted by them. R. 96. Plaintiff could "carry out a variety of tasks" in settings without strict time or production demands. *Id*. Plaintiff was also moderately limited in her ability to interact appropriately with the general public, to accept

8

instructions and respond appropriately to criticisms from supervisors, to get along with coworkers and peers without distracting them or exhibiting behavioral extremes. *Id*. She could "maintain brief superficial interactions in less public work settings." *Id.* Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and could "adapt and manage in a structured and predictable work setting, where major changes can be explained in advance." *Id.*

Dr. Haskins reviewed the record on reconsideration for the state agency, R. 124-29, and opined that Plaintiff would be moderately limited in her ability to maintain attention and concentration for extended periods, in her ability to work in coordination with or proximity to others without being distracted by them, and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 128. According to Dr. Haskins, Plaintiff "[c]an carry out a variety of tasks in settings without strict time or production demands where [she] can work away from others." *Id.* Dr. Haskins further opined that Plaintiff would be moderately limited in her ability to interact appropriately with the general public, in her ability to accept instructions and respond appropriately to criticism from supervisors, and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* In this regard, Plaintiff "can maintain brief superficial interactions in less public work settings. No over the shoulder supervision or contact feedback." R. 128. Finally, Dr. Haskins opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting: she "would be able to work in a static environment. Work with sudden changes may be a stressor, cause her [symptoms] to heighten." R. 129. In all other areas, Dr. Haskins found that Plaintiff had no significant limitation. R. 127-129.

The ALJ found the opinions of these state agency psychologists "mostly persuasive":

> On August 28, 2018, and November 2, 2018, State Agency psychologists, Dr. Edwards and Dr. Haskins, reviewed the claimant's file and objective evidence. State agency medical and psychological consultants are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act (SSR 17-2p). Dr. Edwards and Dr. Haskins concluded that the claimant has no more than moderate limitations. Dr. Edwards and Dr. Haskins' findings are mostly consistent with the overall objective evidence, however, some of their findings are somewhat vague, such as their limitation to "superficial" interactions. Therefore, Dr. Edwards and Dr. Haskins' opinions are mostly persuasive.

R. 24 (citations to record omitted).

A December 2019 Mental Impairment Questionnaire completed by Counselor Trainee Wendy Rutledge, and also signed by Kevin O'Neill, MS-LPCC-S, listed Plaintiff's diagnoses as severe bipolar 1 disorder, generalized anxiety disorder, and PTSD, manifested by poor memory, sleep disturbance, mood disturbances, emotional lability, decreased energy, manic syndrome, anhedonia, intrusive recollections of traumatic experience, generalized persistent anxiety, feelings of guilt/worthlessness, difficulty thinking or concentrating, hostility and irritability, and suicidal ideation or attempts. *Id*. Plaintiff's psychiatric condition also exacerbated her physical symptoms. *Id*. Plaintiff would be off task for 20 percent or more of the workweek, and would miss work more than three times per month. *Id*. An assessment of Plaintiff's ability to engage in work-related activities indicated that Plaintiff had "none-mild" limitations in her ability to understand, remember, or apply instructions, R. 1615, but "marked" or "extreme" limitations in her ability to work at an appropriate and consistent pace, complete tasks in a timely manner, ignore or avoid distractions while working, sustain an ordinary routine and regular attendance at work, and work a full day without needing more than the allotted number or length of rest periods. *Id*. Plaintiff was markedly limited in her ability to relate to and work with supervisors, co-workers, and the public, and was extremely limited in her ability to focus attention on work

activities and to stay on task at a sustained rate, in her ability to regulate her emotions, control her behavior, and maintain well-being in a work setting. R. 1616. "Clmt exhibits severe discomfort & pain, and consistently marked mood disturbance. It is of my clinical opinion that [Plaintiff's] mood disturbances & physical pain prevent her from being able to engage in meaningful work/labor." *Id.*

> The ALJ considered this opinion as follows:

> On December 3, 2019, the claimant's counselor, Ms. Rutledge, not an acceptable medical source, submitted an opinion. Ms. Rutledge found that the claimant has several marked and extreme limitations, and her findings are not supported by objective treatment notes, including her own notes. The claimant told Ms. Rutledge, "If I'm on my meds I'm pretty much OK". On February 1, 2019, less than 60 days from the date of her opinion, counseling notes indicated that the claimant had average demeanor, eye contact, psychomotor activity, clear speech, no delusions, non-aggressive and cooperative behavior, normal coherent and logical thought processing, and notably, euthymic mood with full affect. Importantly, Ms. Rutledge's findings are not only inconsistent with objective treatment findings, but they are also contradicted by multiple physician opinion evidence who are acceptable medical sources. Therefore, Ms. Rutledge's opinion is not persuasive.

R. 24-25 (citations to record omitted).

Plaintiff disagrees with the ALJ's evaluation of these opinions. For claims such as Plaintiff's, *i.e.,* those filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the

---

[4] As noted above, Plaintiff filed her applications on June 5, 2018.

treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion and ALJ may—but is not required to— explain how she considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2). However, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [the claimant's] case record." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

The ALJ in the case presently before the Court complied with the applicable regulations and law. She expressly articulated the relevant legal standard: "…[T]he undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings. . . ." R. 24. The ALJ also considered the crucial "supportability" and "consistency" factors required by the applicable regulations. As the ALJ observed and as this Court's summary of evidence confirms, the relatively extreme limitations articulated by Ms. Rutledge and Mr. O'Neill are not supported by Plaintiff's treatment notes. Moreover, the ALJ also properly found that this opinion is inconsistent with the opinions articulated by the state agency reviewing psychologists. In short, the ALJ's evaluation of evidence and opinions relating to Plaintiff's mental impairments complied with the applicable regulations and finds substantial support in the record.

Plaintiff nevertheless complains that the ALJ's evaluation was flawed because the ALJ "failed to notice that [Ms. Rutledge's] opinion was also executed by [Mr.] O'Neill" and therefore failed to address the persuasiveness of Mr. O'Neill's opinion. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 1690. However, any error in this regard is surely harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking

reversal normally must explain why the erroneous ruling caused harm."). The ALJ's evaluation of this opinion was based, not on the particular person or persons who articulated the opinion, but on the fact that the opinion lacked the necessary supportability and consistency. That evaluation would not, presumably, have changed even had the ALJ acknowledged Mr. O'Neill's signature.

Plaintiff also contends that the ALJ should have accorded greater weight to the opinion of the treating counselors, rather than to those of the non-examining state agency psychologists who in any event did not have the treatment records of Mahajan Therapeutics available to them. However, state agency reviewing consultants are highly qualified and experts in the evaluation of the medical issues in disability claims under the Social Security Act, and their opinions "may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *2, *3 (July 2, 1996).

Plaintiff also complains that the ALJ erred in relying on the opinions of the state agency psychologists because they did not have the treatment records from Mahajan Therapeutics before them when they rendered their opinions. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 1692. The Court disagrees. It is clear that the ALJ considered those treatment records and took those records into account in her evaluation of the evidence. The ALJ did not err in this regard. *See McGrew v. Comm'r of Soc. Sec.,* 343 Fed. Appx. 26, 2009 WL 2514081, **5 (6th Cir. Aug. 19, 2009).

Finally, Plaintiff argues that, because no medical professional ever reviewed all the evidence relating to Plaintiff's mental impairments, the ALJ must have improperly relied on merely her own lay opinion in crafting Plaintiff's RFC. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 1692-93. Again, the Court disagrees.

A claimant's RFC is the most that a claimant can do despite her limitations. 20 U.S.C. §§ 404.1545(a)(1); 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c); 416.927(e)(2), 416.946(c). In making that determination, the administrative law judge must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 633 (6th Cir. 2004); SSR 96–5p, SSR 96–8p. However, there is no requirement that an ALJ adopt verbatim a medical expert's opinion as to a claimant's ability to engage in work-related activities. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") Thus, an ALJ does not improperly assume the role of a medical expert merely by assessing the medical and non-medical evidence when determining a claimant's RFC. *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009). Moreover, the ALJ need include in the claimant's RFC only those limitations that the ALJ deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Like all findings of the ALJ, however, the ALJ's RFC determination must be supported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779 (6th Cir. 2009).

In the case presently before the Court, the ALJ properly considered all the evidence and, for the reasons stated above, her reliance on the opinions of the state agency reviewing psychologists in formulating Plaintiff's RFC was not improper. Plaintiff's contention in this regard is without merit.

**B.      Listing 1.04**

The ALJ found that Plaintiff's lumbar spine degenerative disc disease was a severe

impairment. R. 19. Plaintiff argues that the ALJ erred in concluding that that impairment neither

met nor equaled Listing 1.04,[5] which addressed[6] disorders of the spine.

Plaintiff appeared at the administrative hearing wearing a back brace and using a cane. R.

68. She testified that she had used a cane, which had been prescribed by her doctor following

two falling incidents, for about six weeks. R. 69. She believes that her falls were caused by

radiculopathy and numbness in her leg. *Id.* She has undergone injections in her back; the first

"worked really well," but the second "did nothing." *Id.* She was awaiting the scheduling of a

third. She experiences back pain, which she rates 6 on a 10-point scale, every day. R. 70. She

also suffers from incontinence. *Id.*

---

[5] 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

>   A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

>   or

>   B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

>   or

>   C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

[6] On December 3, 2020, the Social Security Administration published final rules that revised the criteria in the Listings pertaining to musculoskeletal disorders. These revisions replaced Listing 1.04, effective April 2, 2021. *Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020). Since the ALJ issued the decision here on February 6, 2020, Listing 1.04 applies.

In 2013, *i.e.,* years before her alleged disability onset date of November 28, 2017, Plaintiff underwent a right hemilaminectomy for a large right paracentral disc herniation with prominent displacement and compression of the right S1 nerve root. *See* 516-17. An MRI of the lumbar spine administered in November 2017 revealed, *inter alia*, findings "consistent with previous right hemilaminectomy defect with some epidural scar identified along the right lateral aspect of the thecal sac and within the right paracentral and right lateral recess region abutting the right S1 nerve root." R. 516, 1355. *See also* R. 1631. In November 2017, Plaintiff's treating provider, Jin B. Chung, M.D., noted bilateral positive straight leg raises. R. 1227. The record also contains a complaint of "gait problem" in November 2018, R. 1289, but Plaintiff denied gait problems during a visit to an urgent care in January 2019, R. 1638, and during a visit to an emergency department in May 2019. R. 1395. Moreover, the ALJ noted numerous other references in the record reflecting findings of normal gait and balance. R. 23. The ALJ noted Plaintiff's testimony that she requires a cane, but found that "the objective record does not indicate that the claimant requires the use of an assistive device or that one is medically necessary on a regular basis." R. 23.

In August 2018, Venkatachala Sreenivas, M.D., conducted an initial review of the record on behalf of the state agency, specifically considered whether Plaintiff's spine disorders met or equaled Listing 1.04, R. 93, and completed an RFC assessment. R. 89-96. According to Dr. Sreenivas, Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for four hours and could sit for six hours throughout an 8-hour workday. R. 94. She could only occasionally pull and/or pull, climb ramps and stairs, stoop, kneel, crouch, and crawl because of pain from "failed laminectomy presenting with [left lower extremity]

radiculopathy." R. 94-95. She could frequently balance, but could never climb ladders, ropes, or scaffolds. R. 94. She should avoid unprotected heights and heavy machinery. R. 95.

On October 30, 2018, Abraham Mikalov, M.D., reviewed the record on reconsideration for the state agency. R.123-27. Like Dr. Sreenivas, Dr. Mikalov considered Listing 1.04, R.124, and also completed an RFC assessment. R. 125-127. According to Dr. Mikalov, Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and could stand and/or walk, and could sit for about six hours, each, in a workday. R. 125. Because of pain resulting from her failed laminectomy presenting with left lower radiculopathy, pulling and pushing would be limited to "frequent." *Id.* She could occasionally climb ramps and stairs, and stoop. R. 126. She could frequently balance, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds. R. 126.

As noted, Plaintiff insists that her back impairment meets or equals Listing 1.04A or 1.04C. In order to qualify for disability under a listed impairment, a claimant "must have a medically determinable impairment(s) that satisfies *all* of the criteria in the listing." 20 C.F.R. §§ 404.1525(d); 416.925(d) (emphasis added). The claimant "must point to specific evidence that demonstrates [that] [she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). The United States Court of Appeals for the Sixth Circuit has held that an ALJ need only make sufficient findings somewhere in her decision to support her step three conclusion. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). Critically, the burden of proof at step three rests with the claimant. *See Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012).

Listing 1.04A requires the following:

Evidence of *nerve root compression* characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and, if there is involvement of the lower back, positive straight-leg raising test* (sitting and supine). (Emphasis added)

Listing 1.04C requires evidence of

Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and *resulting in inability to ambulate effectively*. . . . (Emphasis added).

The ALJ addressed Listing 1.04 at several points in her decision:

Listing 1.04 (Disorders of the spine) is not met or medically equaled because the claimant's back impairment does not result in nerve root compression. The notes indicate that the claimant had a disc herniation that caused nerve root compression in 2013 that required surgery, however, since the claimant's alleged onset date, there is no evidence of nerve root compression (5F versus Record). Instead, the notes during the relevant period show that the claimant has a disc protrusion abutting the right S1 nerve root, but does not show compression (18F/15, 15F/16 versus 5F, 15F/17). It also does not result in an inability to ambulate effectively.

\*\*\*

. . . In 2013, four years before the claimant's alleged onset date, and before the relevant period, objective MRI of the claimant's lumbar spine revealed disc disease with large disc herniation, which caused displacement and compression of the right S1 nerve root (5F/20, 5F/39, 8F/14). The claimant underwent back surgery, which corrected the nerve root compression prior to the claimant's alleged onset date (5F, 16F). . . . In 2018, updated imaging showed only minimal degenerative changes of the thoracic and lumbar spine and she has a disc protrusion abutting, but not compressing, the nerve root since undergoing spinal surgery (15F/41, 15F/16 versus 15F/17). The claimant testified that she continues to experience radicular symptoms, and objective notes show that the claimant has positive straight leg raise test findings (14F). However, objective notes also indicate that the claimant has no gait dysfunction (19F/3, 15F/56 versus 14F/95). Instead, despite the claimant testifying that she requires the use of a cane, objective examination findings show that the claimant has normal gait and balance, despite her subjective reports (16F/44, 16F/52, 16F/60, 16F/68, 16F/92, 15F/133) (SSR 16-3p). Further, notes indicate that the claimant walks "well balanced without assistance" (13F/3, 13F/10, 11F/33). Notes from July 2019 show that the claimant has normal gait and balance (13F). Despite objective notes consistently indicating that the claimant has normal gait and balance, even without assistance, in October 2019, two months prior to her hearing, the claimant presented to counseling with a cane (16F/83). However, the

objective record does not indicate that the claimant requires the use of an assistive device or that one is medically necessary on a regular basis (Record).

R. 19, 23.

Plaintiff complains that the ALJ's analysis of Listing 1.04A was too "limited" and that the ALJ failed entirely to address Listing 1.04C. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 1693-95. To the contrary, as the quoted excerpts show, the ALJ provided a lengthy discussion of Plaintiff's back impairment and of the elements of Listing 1.04A and 1.04C. In connection with Listing 1.04A, Plaintiff points to the positive straight leg finding in the record and contends that that finding should have been dispositive of the issue. But a positive straight leg finding is but one of the necessary elements of Listing 1.04A. That Listing also requires "[e]vidence of nerve root compression" and, as the ALJ found, the evidence relating to Plaintiff's claimed period of disability contains no such finding. As for Listing 1.04C, which requires an "inability to ambulate effectively," the ALJ cited to the numerous portions of the record indicating that Plaintiff ambulates well and has "normal gait and balance." R. 23. Moreover, the state agency reviewing physicians, who are tasked with determining whether a claimant's impairments meet or equal a Listing, *see* SSR 17-2p, 2017 WL 3928306, at *3 (March 27, 2017), expressly considered Listing 1.04 in their reviews of the medical record. R. 93, 124. The very fact that both physicians also considered Plaintiff's RFC demonstrates that both physicians concluded that Plaintiff neither met nor equaled Listing 1.04. *See* SSR 17-2p, 2017 WL 3928306, at *2 (March 27, 2017) ("If an individual's impairment(s) meets all the criteria of any listed impairment in the listings, we will find that the individual is disabled.). Under these circumstances, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's back impairment neither meets nor equals Listing 1.04. This Court must therefore defer to her decision even if there exists evidence to support an opposite conclusion. *See Warner*

*v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)).

## VI.    CONCLUSION

For all these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 12, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  November 15, 2022                           *s/Norah McCann King*
                                                    NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE